Good afternoon. The Judge Aldersert is going to be able, he's in Santa Barbara, and he is with us on this panel. He will be able to see us. We will not be able to see him. So if you hear something like the voice of God on a question, it is Judge Aldersert. And if there's anybody that should be the voice of God, it should be he. Judge Aldersert, can you hear me? I can see, hear, and see both of you. All right. The voice of God, what did I tell you? He didn't just use the word handsome, did he? First case we have today of the three is Leslie v. Attorney General, number 08-3180. Ms. Kames, how do you pronounce your name? Kames, Your Honor. Kames. Yes. And Ms. Bonzo. May it please the Court, my name is Sarah Kames, and I am counsel for Petitioner Mr. Neville Leslie. I would like to reserve five minutes of my time for rebuttal. That's fine. Okay. I have been appointed by this Court as counsel to address certain failures of the Department of Homeland Security to provide Mr. Leslie with notice of the availability of free legal services in his removal proceedings. I would also like to argue today that the Department of Homeland Security failed to provide Mr. Leslie with notice of the date and time of his removal proceedings. The last one, just to deal with it first because I think the first one is far more important. The problem you have here is that, yeah, the notice was wrong, but he did get notice the day before, he did show up on April 16th, and he did say he had no problem showing up on April 16th. So it's hard to show that there was anything in any way that was wrong here simply because he didn't seem to agree with that on the 16th. Well, Your Honor, I have to disagree that the fact that he showed up at the hearing on the 16th has any bearing on whether he – No, I agree with that. It's a statement that he had no problem going forward. Well, the judge simply asked him, are you ready to proceed? Well, that's – sure, but that's not the notice issue, right? That gets us to what 1240.10 says the IJ should have done. And if I read my colleague, Judge Ambrose, correctly, he's suggesting to you that's your much better, stronger issue to talk about. You've got a really strong argument there. Well, just to focus on the Department of – let me jump in here. The cases that we have on notice are cases that were – no notice had been given. He had notice here for the first time when the sheriff brought him out of jail to attend a hearing or got notice that a sheriff was coming. But the issue that interests me here is the question of, do we require more than naked notice, but sufficient notice to permit one to prepare for the hearing? And yes, Your Honor. That is the thing that – I'm sorry, Your Honor. Go ahead. I'm sorry, I didn't mean to interrupt you. That's the point. No, it's fine. That's exactly what I would like to argue here today, is that while Mr. Leslie was present at the hearing and he did get initial notice that a hearing was to occur, the fact that he didn't have notice of the date and time of his hearing made it extremely difficult for him to counter the government's case here. He does contest the fact that he's removable, and he was not able to bring any documentation that he had with him to contest the government's case that he was removable. And that's really the problem with the notice here. Although he stated he was ready to proceed, I would argue that being brought into a tribunal with no notice of what was going to happen there or what you were doing, any layperson in that situation wouldn't realize that there was really an opportunity for him to ask for a continuance to prepare. But based on those facts, isn't that issue at least somehow tied to the other issue? And as much as counsel, had counsel been present, or had counsel been permitted, would have been in a position to intelligently raise such an issue. That is, we're not prepared, Your Honor. Well, Your Honor, you could certainly argue that, but in immigration proceedings there is no absolute right to counsel. Mr. Leslie could have proceeded on his own with no problem if he had been given time to prepare. So I really think you can see them as linked, and maybe in this case they were. But in general, I think there is two problems with notice here, the first one being time and date. But now I'd like to take Judge Ambrose's suggestion and move on to the notice of the available legal services. And in this instance, the government hasn't even tried to argue that they have satisfied the regulation that they're required to give Mr. Leslie notice of free legal services that he could have used during his removal proceedings, nor did the immigration judge here ask Mr. Leslie. And the list that would go with it. Yes, Your Honor, the list entailing those services. Nor did the immigration judge ask Mr. Leslie if he had in fact gotten that list of services. I think the only issue we really have here is if this regulation is violated, and it's pretty clear here it was, should we require a showing of prejudice? And that's what we had asked counsel prior to our argument to weigh in on. Yes, Your Honor. And I think that the Second Circuit's ruling here is much stronger than the Ninth Circuit's. The Second Circuit relies on a line of Supreme Court precedent based on a case called Icardi. And that case says that whenever an agency violates its own regulations that have been passed that are intended for the benefit of an immigration petitioner, there's no need to show prejudice in order for a petitioner to get a new hearing. The Ninth Circuit was dealing with a different kind of regulation than the one at issue here, and they relied instead on a line of Supreme Court precedent called American Farm Lines. You're talking about Calderon and Medina? Yes, sir. So Calderon and Medina relied on American Farm Lines, which dealt with an ICC regulation that was passed merely, or existed merely for the convenience of the Interstate Commerce Commission in granting licenses to commercial carriers. Yes, I mean, there's a good argument. American Farm Lines actually helps you for the reasons you're stating. Here you're dealing with something that was purely administrative and for a different purpose, that is to list the competitors in order that they can assess, among other things, the competition, et cetera. But it didn't pertain to that particular petitioner. Here you've got about as basic a right as one can think of, the right to counsel. Now, we have a case, Chong, which, have you read that? Yes, Your Honor. It appears to me, I don't know if you have it in front of you, there may have been a mistake in translation here. Take a look at page 389, if you have it. Do we have that? It's the 164, Fed 3rd, 378. Go to 389 if you would. 389. And it's the right-hand column. And it begins, it's the paragraph that begins, however we hold. I'm sorry, say the first sentence again, Your Honor. It's actually Head Note 11, however we hold, that to warrant reversal, the 3.7 violation must have prejudiced Chong. Yes, I see it, Your Honor. I'm sorry. And then it goes down and it cites a cardi. But then it goes to the last full sentence on that page, about 12 lines up from the bottom. It says, although the Accardi Doctrine, you with me there? Yes, Your Honor. Originally contemplated that an agency's failure to comply with its own rules automatically would nullify its actions. The Supreme Court since has required that claimants demonstrate prejudice resulting from the violation, and then unless the rules were not intended primarily to confer important procedural benefits upon individuals. I think the word not is a mistake that our court made in quoting the Fourth Circuit's case in Morgan. And the Fourth Circuit is taking it from American Lines, but it appears that in American Lines, if it's administrative, you have to show prejudice. If it's not administrative, you don't. Is that your reading? Well, Your Honor, I do recognize that the not in this sentence in Chong doesn't make much sense there. It doesn't make sense. But it does quote Morgan, the Fourth Circuit case, correctly. I just think Morgan, I always say to people, little things mean a lot. I think Morgan incorrectly cites American Lines and puts a not in the wrong place. Well, the other thing I would say about American Lines is that it itself distinguishes a cardi. I mean, it says that they're not applying a cardi there. And I think that's an important point to keep in mind, that Calderon Medina simply lumped a cardi in American Farm Lines together with no consideration of the fact that American Farm Lines was, in fact, saying it was applying an entirely different line of precedent than a cardi was. And then what did PICA say to deal with that? I'm sorry. What did the Second Circuit case in PICA say to deal with that? Well, the court there didn't deal with the issue that American Farm Lines didn't address a cardi. They simply said that American Farm Lines was a different kind of precedent, one where regulations were not enacted for the benefit of the people contesting them. And therefore, prejudice may be required in that situation. But here, where an agency violates its own regulations. But the focus then needs to be on who is really, who or what interests, whose or what interests are being served by the regulation. Yes, Your Honor. And here, Mr. Leslie's interests clearly were being served by the regulation. The regulation exists because the Immigration and Nationality Act directed the Department of Homeland Security to enact regulations to protect aliens rights to counsel. And I'm going to stop unless you have further questions. I have no further questions. Judge Aldersert, do you have any questions, further questions? No further questions. Okay, thank you. We'll hear from Ms. Sponzo. Good afternoon, Your Honors. May it please the Court, Jem Sponzo on behalf of the Respondent. Let me ask you a question at the outset pertaining to your submission to us. You say that there, on page 11 of your brief, your 13-page brief, that there is, quote, there is simply no right to counsel in removal proceedings. You don't mean that, do you? First and foremost, I'd like to apologize that our answering brief does not explicitly address this Court's order. However, I would respectfully submit that the response brief does answer the question, particularly whether Petitioner presented a colorable due process violation or legal issue over this Court, over which this Court would have jurisdiction. But you've got, go ahead, Judge Aldersert, why don't you go first? I have a serious, a very serious problem with a government's brief, which designed to assist this Court, who does not respond at all to the main question about the requirement of the immigration judge to instruct the Respondent in that proceeding that he has, that a list of free counsel is available. Now, it goes further. If the government does not present a defense to that basic issue presented by the appellant, is the government precluded from arguing a position not contained in the brief? In effect, have you waived it? No, I would argue not. And why? Well, we proceed from the first step being that Petitioner is removable as an aggravated violence and a controlled substance offender. No, we're talking about the process here that you've got two statutes, 8 U.S.C. 1229A-B4A, which provides that an alien shall have the privilege of being represented at no expense to the government but by counsel of the alien's choosing. And 8 U.S.C. 1362 provides that in any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from such removal proceedings, the person concerned shall have the privilege of being represented at no expense to the government by counsel. Then you have your regulation, 8 CFR 1292-5B, whenever an examination is provided for in a chapter, a person involved shall have the right to be represented by an attorney or representative. And then what Judge Smith quoted at the outset, basically it's almost like this is a rote reading that should be done. It's, I don't, you know. It's like part of an instructional manual to an immigration judge as to at least how to begin, convene, and then conduct an immigration hearing. I mean, it's like basic. It's extremely basic. It's like a checklist. And there can be no argument. The transcript says what it says. There can be no argument that I.J. Durling didn't do as he was required to do in terms of his instructions. If we might just step through. Let me just put. I'm going to summarize your brief. When you summarized and here's what your argument. Petitioner was offered an opportunity to request additional time in which to do it. Petitioner cannot read into this exchange, any deprivation of his right to a full and fair hearing. There is simply no right to counsel in removal proceedings. I think Coleman, there is no constitutional right to an attorney and the state post conviction proceeding. You completely ignored the basic issue. One of the two basic issues presented. And I'm just wondering why the government didn't see fit to assist this court. And making a response. Thank you. No, thank you. And again, I apologize. The brief approaches this case. In a slightly different. Perspective. From a wholly different perspective. I mean, you don't cite. The. Provisions here. There's something. I don't know. Maybe you assign this to somebody who was just brand new on the job. But. I mean, your, your section is the one that knows this stuff. Backwards, forwards and sideways. Yes. And. Didn't come through here. The only argument you have. Is that. We as a court. Should side with the ninth circuit in Calderon. And find that prejudice must be required. And that there wasn't any prejudice here. And the problem that you have with respect to that particular argument is. That you're dealing with individual. Rights. That are. At the base of our. Our whole adversarial system. Our whole system of. Of deciding disputes. I would suggest there is an alternative. Alternative approach, your honor. The notice to appear. Which petitioner does not dispute that he received. Explicitly indicates. Once he did appear. How he could not divine. That. Okay. He said. They said, you know, do you have counsel. We have a right to counsel. And but. Not a government expense. He said, well, I don't have any money. And then the. Judge never said the second and the third thing. But there, there are free counsel available. And here's a list. Well, if I may. Just return to the notice to appear for a moment. It does indicate the petitioner was provided. With the list in question. The list of low and no. Cannot be. Cannot be verified in the record. It cannot. Because that is provided to petitioner. Along with the notice to appear. But if it's not in the record. Before us, it's not. But. That having been said. Let's assume. That although it's not in the record. As a matter. Of absolute fact. It was received. Does that. Somehow. Obviate. The mistake. The omission. The oversight. In the colloquy that was conducted by the. No, your honor. And I read. The reg says what it says. Exactly. I readily concede. That if this court is looking. In the transcript for the immigration judge. To have engaged in that last portion of 1240.10. At which point the immigration judge confirms. That the alien did in fact receive. The list of it's being provided and it's received that list. We are missing. That sentence. But this is not. A case. In which this court should price. Warm over substance. Petitioner. Remains. Ineligible. For any relief from removal. He has not. Offered. Any. But if there. If there. Is not a requirement. That he show prejudice. Can't win. But for the fact. That the immigration judge. By taking the time to confirm. That petitioner did in fact. Wish to proceed. Without a continuum. But he. In effect. He was. He had no money. And he decided to proceed. Without being told. There were free counsel available. I mean. We just we disagree on the. On the first element there. There is every indication in the record. For this court. Petitioner did receive that list. There are situations. That box is not checked on the notice to appear. What we laugh. All right. Then why. Why. Why didn't you argue. That in your brief. Why didn't you argue. In the brief. Instead of coming before us. You know. You have a responsibility. To assist the court. Now you are bringing. Out an argument. That's not in the record. And. And I'm not sure. That we can even notice it. If you did not. Present. That in the. In an appendix. Or someplace else. Our brief. Proceeds based on the record. That is before this court. That record. Lacks any indication. That petitioner did not receive that list. And it lacks any indication. Where does your. Where does it say in your brief. That you see the record is clear. Petitioner was offered an opportunity to request additional time. In which to locate counsel. When it declined to do so. That doesn't say that. Is entitled to free counsel. Where does it say he got notice that gave him a list. It is not set forth. Explicitly in the brief. How are we supposed to know that if you don't tell us. I mean, you're coming here telling us that today. But. It's, you know, time's up. Even, even characterizing. What occurred before the IJ. As. The applicant. Was given an opportunity. For more time. Is a generous construction. Of what the IJ actually asked. Which was skewed more in the other direction. To wit. All right. Do you want to proceed. And answer questions of the court today. Or would you like additional time. That's that. Well, that that that is a major disjunctive. Isn't it. Would you like more time is a fundamentally different question. The burden simply is not on the immigration judge. The burden is on the immigration judge to follow the darn regulation. Yes. Sometimes. I don't want you to feel like you're being taken to the woodshed. And I'm sure oil is sometimes frustrated with us. And we are sometimes frustrated with oil. Speaking only for myself. I am sure you folks have a lot of cases. And have for a lot of years now. There are some of them though. That it seems to me. Call for an attitude that steps back and says. You know. The IJ did blow it here. And maybe we ought to just concede that up front. And take the easiest course. I again speaking only for myself. Given what I do know about this case. I wouldn't want to give odds on Mr. Leslie eventually prevailing. But it ought to be done the right way. And as Judge Ambrose has suggested in his questions. With something as fundamental. As Mr. Leslie's right to a lawyer. Which was handled in a very peremptory fashion. By the IJ. And absolutely contrary. To what the regulations explicitly required him to inquire into. This case to me seems like a perfect candidate. For a more judicious approach. By oil. But for the fact that Petitioner remains utterly ineligible for any relief. As I've said. What we have here is in substance. You know what. You may be right. But the point is. There's a process. There's a way that we go about doing things. And it really. I was telling someone yesterday. That I remember my second month on the job. Where I'd asked for oral argument in a case. That it appeared that there wasn't much on the merits. But there was a process issue. And the government attorney came to the oral argument. And stood up and said. I'm here to tell you. That we agree that there was a procedural problem here. We've looked at it. And we think it calls for a remand. We never went any further. That's what professionals do. But the problem in this case, your honor. Is that this court has explicitly recognized that harmless error. Or an irregularity. We have not dealt with the issue by PICA. And as I said. If you try to cite Chong to us. Chong relying on Morgan. Contains a misplaced not. Because they both rely on American Lines. And it's pretty clear that American Lines. When it's, as Judge Smith said. When it's administrative. When it's supervisory. And relates to the internal workings of the agency. You've got to show prejudice. But when it's a benefit conferred on an individual. Then you don't have to show prejudice. That's basically the party line. But PICA is distinguished. Now before. May I just shift gears for a minute. What was the notice given to. For the hearing. What does the record show. About the notice. Other than that he was brought from incarceration. Other than being brought by incarceration. Was there any other proof of a notice received. After you had the wrong address. I would note at the outset. That I think there may be a slight misapprehension. Of what each facility was called. In the record before this court. The only indication. That petitioner was somewhere other than where his notice was sent. Is petitioner's self-serving statement. In his appeal brief to the board. Instead what we have is a properly served notice to appear. And a subsequent hearing notice. Sent to York Ice. Hyphen Clinton. Irrespective of whether there may be additional notices. What petitioner's allegations may have been. The fact remains that the petitioner did receive his notice to appear. Following his 14 year prison sentence. And his transfer to immigration custody. He knew the nature of the proceedings to which he was being referred. And as your honor noted. There is nothing to indicate. At petitioner's first appearance before the immigration judge. That he did not have that notice. So I think the notice issue in this case. The reason that I am inquiring. I go back to my original concern. The timeliness. If the notice consists of a governmental police officer. Bringing a respondent to an immigration hearing. Sure he is there. And he certainly had some sort of notice. But I wanted to know if you could help us out. Straighten out the allegation that was the wrong prison. The wrong address. But I'm putting all of that aside. I'm just saying that. That bothers me. Okay. I see that my time has run out. Briefly. In these kinds of cases. Where an individual is transferred from a prison sentence. Into immigration custody. There is necessarily a different timeline than we might have otherwise. And transfer of detention location. That's reflected in the record before this court. But none of that changes. And none of that. None of petitioner's allegations. Regarding his perception of the transfer from prison. Into immigration detention. Change what we have. Based on the record. I think the point the judge officer is making. Is if you get. If you find out on April 15th. That there's a hearing. And. If that's compounded. The situation is even particularly worse. Where you're not even told the next day that you have. A right to free counsel. And. You. Simply do not have enough time to prepare. I mean, bottom line. It's like being told that you have a major exam tomorrow. And. You don't. You haven't even had the benefit of anybody telling you what's in the course. I would just note that the appropriately served hearing notices dated April 8th. And the hearing. But it didn't get to him. It didn't get to him. We all. We all know that. It didn't get to him to the 15th. Correct. I. Believe that the record for the support is mired and. Confused by petitioner's appeal. My understanding is it did not get to. He, because he was still with you. So is it Clinton? Is that right? It didn't get to him to the 15th. And I think it was pretty much clear the next day that he had noticed the day before. To answer the first part of your question, your honor. I think we need to split. The regulation had issued 1240.10. There is every indication that petitioner did receive that list. I'll be it. It's not in the record. It's not in the record. But we are missing. And judge Smith has answered. Even if it is, was in the record. You still haven't dealt with the question. Do you really have time to prepare here? And also with respect to something that's basic. This is really a lay down hand. I think it is. I think it is. Petitioner remains ineligible for any relief from removal. You may win in the long run. But let's try to do it the right way. We would characterize that regularity. I think it's time to sit down. Thank you so much for the additional time, your honor. Actually, one aside, Ms. Ponso. I think this is the first time since I read To Kill a Mockingbird that I've seen someone with the first name Jim. Thank you, your honor. Last count. I just want to make one final point that I think you clearly know. But the government stood up and said that ruling for Mr. Leslie here would put form over substance. And I think that's just incorrect here. This court has recognized in other cases, such as Charleswell, that there are some errors that are too central and core to a proceeding's legitimacy to require a prejudice standard. And I think this is one of them. If the court has any further questions, I'm happy to answer them. No further questions. Thank you, your honor. Thank you. Take the matter under advisement and call the next case. United States v. Green, number 08-2330. Mr. Greenberg and Mr. Sanders.